JAMES WALKER *et al.*, Plaintiffs-Appellees, *v.* MIDWEST EMERY FREIGHT SYSTEMS *et al.*, Defendants-Appellants.

First District (5th Division)   No. 82—1239

Opinion filed July 15, 1983.—Modified on denial of rehearing December 16, 1983.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll, of counsel), for appellants.

Philip E. Howard, Ltd., of Chicago (William J. Harte, of counsel), for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiff James Walker brought this action to recover damages sustained when he was run over by the rear wheels of a truck-tractor upon which he had been riding and from which he fell. His wife, Josephine Walker, who joined as plaintiff, sought damages for loss of consortium. Plaintiffs' action sought recovery against the defendants on the theory of negligence. The defendants were Walter Green, the operator of the truck; John Tunstall, Green's fellow employee; Paul E. DeMuth d/b/a Lowery Trucking Co. (hereinafter Lowery Trucking), lessor of the truck-tractor and Green and Tunstall's employer; and Midwest Emery Freight Systems (hereinafter Midwest Emery), the lessee of the truck-tractor.

During the trial, plaintiffs moved to strike certain affirmative defenses pleaded by defendants interposing the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) as a bar to plaintiffs' common law action. The trial court granted the motion after determining, as a matter of law, that plaintiff James Walker was an independent contractor rather than an employee or fellow employee of defendants. From this ruling and from the subsequent verdicts and judgments entered in favor of plaintiffs, defendants appeal.

Defendants have raised several issues claiming prejudicial error; however, the dispositive issue presented is whether the trial court erred in ruling, as a matter of law, that plaintiff was neither an employee of Midwest Emery nor a fellow employee of defendants Green And Tunstall. The pertinent facts are as follows.

On the night of March 24, 1974, four over-the-road truck drivers were present in the Chicago truck depot yards of defendant Midwest Emery. The drivers, plaintiff, David Hardin, defendant Green and defendant Tunstall, had previously driven their respective tractor-

trailer combinations to the yards where they were parked. The trucks driven by Green and Tunstall were owned by Paul DeMuth, d/b/a Lowery Trucking. The trucks driven by plaintiff and Hardin were owned by plaintiff. Each of the trucks, with driver, had been leased by their respective owners to Midwest Emery and were, when on the road, operating pursuant to Midwest Emery's Interstate Commerce Commission Certificate. Plaintiff was both owner and operator of the truck driven by him.

The uncontroverted trial testimony established that the incident resulting in plaintiff's injury occurred when, in an effort to start the engine of Tunstall's tractor which could not be started by normal cranking due to the cold, Hardin, Green and Tunstall agreed to tow the nonstarting tractor with a driver in the towed tractor engaging and disengaging its clutch. Hardin's combination was used as the towing vehicle and the vehicles were connected by an 18-foot chain. Despite several towing attempts with Tunstall at the wheel of the towed tractor, no ignition was achieved. Then plaintiff, who had been performing truck maintenance in the nearby Midwest Emery garage, became involved by mounting the frame behind the cab of Tunstall's tractor intending to foster ignition by injecting ether into Tunstall's tractor's diesel air intake system. Green replaced Tunstall in the cab of the nonstarting tractor and Hardin operated the towing combination. Plaintiff testified that Tunstall acted as signalman for the maneuver which followed. The ensuing accident occurred when, after the two vehicles had moved a distance of between 15 to 25 feet, plaintiff was run over by the rear wheels of the towed tractor upon which he had been standing.

The parties' testimony with respect to the factors causing plaintiff to fall under the truck's wheels was controverted and need not be fully summarized here. In sum, plaintiff's version was that the towed truck began to run and then came to a stop. Believing that the truck was not going to move, he began to dismount at which moment the truck unexpectedly jerked, causing him to fall under its rear wheels. Green testified that as the towed truck's engine began to "kick over," both vehicles came to rest and did not move again. By that time, plaintiff was on the ground. Tunstall and Green both denied that Tunstall participated in the maneuver as signalman. Hardin did not testify.

Both Lowery Trucking, owner of the towed vehicle, and plaintiff, owner of the towing vehicle, had entered into contractual relationships with Midwest Emery whereby each leased their respective trucks, with drivers, to Midwest under similar lease agreements. Under the terms of plaintiff's lease agreement, entitled "Equipment Contract," plaintiff leased a specified tractor to Midwest Emery for a period of not less

than one year. The lease could be terminated at Midwest Emery's option by giving 30 days' notice to plaintiff. Plaintiff was to pay all operating and maintenance expenses of the tractor, agreed to comply with all applicable safety regulations, and was to be paid a certain percentage of the revenue derived from the operation of the tractor. Midwest Emery agreed to pay plaintiff's social security taxes and unemployment taxes and to pay directly to plaintiff's driver his wages. In the event that plaintiff and driver were one and the same, payment of rental and wage was to be by mutual agreement of the parties. A driver was to be provided by plaintiff who was to be his "employee."

The lease also contained a clause providing that Midwest Emery was "to retain exclusive possession, control and use of said vehicles for the duration of this contract, within the meaning of, and only for the purpose of, compliance with the ruling of the Interstate Commerce Commission." Midwest Emery further reserved "the right to control the manner, means and detail of and by which the Contractor [plaintiff] *** performs his services as well as the ends to be accomplished ***." Finally, an additional clause provided:

"It is the intent of the parties that the contract [*sic*] have the legal rights and legal liabilities which accrue to any independent Contractor, except insofar as the specific provisions of this contract conflict with such status, and further excepting any condition brought about directly by compliance with the law, rules or regulations of any governmental bodies having jurisdiction."

At the close of the evidence, plaintiff moved to strike and dismiss defendants' affirmative defenses which alleged that plaintiffs' negligence action was barred by the Workers' Compensation Act. It was the defendants' position that the action was barred because Midwest Emery was plaintiff's employer and because Green and Tunstall were his fellow servants and co-employees. Plaintiff, referring to the lease agreement, argued that the uncontroverted evidence established that plaintiff was an independent contractor and not an employee or fellow employee *vis-a-vis* defendants. The trial court, relying primarily on the lack of evidence to support a contrary finding, ruled, as a matter of law, that no employer-employee or fellow employee status was established. Accordingly, the motion striking defendants' affirmative defenses was granted.

OPINION

Defendants contend that the trial court erred in striking its affirmative defenses because the lease agreements demonstrated as a matter of fact, if not alternatively as a matter of law, that plaintiff was the

employee of Midwest Emery rather than an independent contractor and that defendants Green and Tunstall were, in turn, his fellow employees and therefore immune from his common law tort action under the Workers' Compensation Act. (See Ill. Rev. Stat. 1981, ch. 48, par. 138.5.) Alternatively, defendants contend that the order striking the affirmative defenses was error because plaintiff's activities fit within the coverage of the Act under the "loaned fellow servant" doctrine. See, e.g., Saldana v. Wirtz Cartage Co. (1978), 74 Ill. 2d 379, 385 N.E.2d 664.

■■ ■ Generally, the question of whether either an employer and employee or a loaned employee relationship exists is a question of fact for the jury, especially where the evidence is conflicting or more than one inference can be drawn from the evidence. (Mosely v. Northwestern Steel & Wire Co. (1979), 76 Ill. App. 3d 710, 394 N.E.2d 1230; Gunterberg v. B & M Transportation Co. (1975), 27 Ill. App. 3d 732, 327 N.E.2d 528; Morgan Cab Co. v. Industrial Com. (1975), 60 Ill. 2d 92, 324 N.E.2d 425.) However, it is settled that where a written contract is claimed to have established the relationship and it is the only factual basis for the claim, and only one inference may reasonably be drawn therefrom, the question becomes one of law. (Gunterberg; Hartley v. Red Ball Transit Co. (1931), 344 Ill. 534, 176 N.E. 751.) The circumstances here make it necessary to determine the relationship of the parties as a matter of law.

■■ ■ It is plaintiff's position that under the instant equipment lease he was an independent contractor, as a matter of law. In support of his position, he selectively paraphrases a portion of the contract clause which states that the intent of the parties was that plaintiff, as equipment lessor, was to be an independent contractor. An examination of the relevant clause which is set forth in its entirety above, however, discloses that the parties also agreed that no independent contractor status was so intended where either (1) such status was in conflict with other provisions of the agreement, or (2) where "any condition brought about directly by compliance with the law, rules or regulations of any governmental bodies having jurisdiction" excepted such status. Thus, this clause alone is inconclusive as to whether the status of independent contractor exists for all purposes. Moreover, although the intention of the parties must be considered in order to determine whether the employer-employee or independent contractor relationship exists (see Manahan v. Daily News-Tribune (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045), it is well established that no single factor is determinative on this issue. (See, e.g., Jones v. Atteberry (1979), 77 Ill. App. 3d 463, 396 N.E.2d 104.) The "classic and principal test" to be applied, as

noted in the *Gunterberg* case, is whether the claimed employee has the right to control the manner and method in which his work is carried out, independent of the employer's control. (27 Ill. App. 3d 732, 738, 327 N.E.2d 528, 533.) And it is the *right* of control, not the fact of control, that is the principal distinguishing factor. (*Gunterberg*; see *O'Brien v. Industrial Com.* (1971), 48 Ill. 2d 304, 269 N.E.2d 471.) In addition to the right to control, other *indicia* to be considered are the amount of supervision and control, the method of making payment, the right to discharge, the skills required, the source of the materials and tools and the work schedule. See generally *Kirkwood v. Industrial Com.* (1981), 84 Ill. 2d 14, 416 N.E.2d 1078.

■ The instant lease, when considered in its totality, particularly those provisions reserving to Midwest Emery "*exclusive possession, control* and *use*" of the leased vehicles and the "*right to control* the manner, means and detail" of plaintiff's performance of services, clearly establishes an unqualified right in defendant Midwest Emery to control the manner and method of plaintiff's work. (Emphasis added.) (See *Gunterberg*.) Moreover, Midwest Emery's unilateral right to discharge plaintiff upon 30 days' written notice further evidences its control over plaintiff's work. (See *Gunterberg*.) In addition, the lease agreement required Midwest Emery to pay plaintiff's wages, social security taxes and unemployment taxes and further entitled plaintiff to certain "seniority rights" under any existing union contract. Consequently, from the terms of the lease agreement, we conclude that the relationship established, as a matter of law, was that of employer and employee (*Gunterberg; Hartford Accident & Indemnity Co. v. Major* (1967), 81 Ill. App. 2d 251, 226 N.E.2d 74) and, therefore, that the trial court's order striking the affirmative defenses based on the workers' compensation statute was error.

We note that several court decisions have held, under differing circumstances, that the amount of control required in order to conform the motor vehicle lease agreements to I.C.C. rules and regulations (see 49 U.S.C. sec. 304(e) (1978); 49 C.F.R. sec. 1057.4(a)(4) (1978)), necessarily requires that the lessee assume responsibility "as if the lessee owned the vehicle and *employed* the drivers." (Emphasis added.) (*Hershberger v. Home Transport Co.* (1982), 103 Ill. App. 3d 348, 351, 431 N.E.2d 72, 74; see also *Schedler v. Rowley Interstate Transportation Co.* (1976), 37 Ill. App. 3d 433, 439, 346 N.E.2d 75, 79 (Dixon, J., dissenting); *White v. Excalibur Insurance Co.* (5th Cir. 1979), 599 F.2d 50; but see *Riddle v. Trans-Cold Express, Inc.* (S.D. Ill. 1982), 530 F. Supp. 186, 189 n.5, which opined that any employee status resulting solely from the statutory requirements is a fiction which exists only to

insure the lessee's responsibility to shippers and members of the general public and not to create an employment relationship for workers' compensation programs.) Our conclusion, however, is independent of these decisions as it rests upon our reading of the terms of the instant lease agreement which we find establishes plaintiff's employee status for purposes of the Workers' Compensation Act as a mater of law.

A common law action by an employee against a negligent employer or co-employee is barred if the injuries were accidental and arose out of and in the course of the employment. (Ill. Rev. Stat. 1979, ch. 48, pars. 138.2, 138.5(a); *Brooks v. Carter* (1981), 102 Ill. App. 3d 635, 430 N.E.2d 566.) The words "arising out of" refer to the origin or cause of the accident and presuppose a causal connection between the employment and the accidental injury; that is, the injury must have had its origins in some risk incidental to the employment. (*Chmelik v. Vana* (1964), 31 Ill. 2d 272, 201 N.E.2d 434.) The words "in the course of employment" relate to the time, place and circumstances under which the accident took place. (*Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331, 412 N.E.2d 492.) An accidental injury is received in the course of employment when it occurs within the period of employment at the place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in something incidental thereto. (*Eagle Discount Supermarket; Chmelik; Brooks*.) For the Workers' Compensation Act to apply both of these elements must be shown to exist. (*Fire King Oil Co. v. Industrial Com.* (1976), 62 Ill. 2d 293, 342 N.E.2d 1; *Stemm v. Rupel* (1975), 30 Ill. App. 3d 864, 332 N.E.2d 686, *appeal after remand* (1979), 68 Ill. App. 3d 211, 385 N.E.2d 1112.) An employer is required to plead and prove, as an affirmative defense, that an action is barred under the Workers' Compensation Act. *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829.

Although we conclude that the terms of the instant lease agreement establish plaintiff's "employee" status, it is not conclusive as to plaintiff's status at the time of the accident for purposes of establishing the affirmative defense under the Workers' Compensation Act. (See, *e.g., Hindle v. Dillbeck* (1971), 1 Ill. App. 3d 1021, 274 N.E.2d 594, *appeal after remand* (1977), 68 Ill. 2d 309, 370 N.E.2d 165.) Since material questions of fact remain under the affirmative defense, namely, whether the plaintiff's injury was one arising out of, and in the course of, his employment, we cannot rule as a matter of law, that plaintiff's exclusive remedy for his accidental injury was under the Workers' Compensation Act. Accordingly, the case must be remanded for a new trial at which defendants may raise the Workers' Compensa-

tion Act as an affirmative defense. By this opinion, however, we intend and express no opinion on the merits of such an affirmative defense raised under the instant facts.

For the foregoing reasons, we reverse the judgment of the circuit curt and remand the cause for further proceedings not inconsistet with this opinion.

Reversed and remanded.

WILSON, P.J., and LORENZ, J., concur.

## SUPPLEMENTAL OPINION

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendants filed a petition for reconsideration or rehearing with respect to certain portions of the modified opinion of this court delivered on December 16, 1983, on denial of plaintiffs' petition and amendment to petition for rehearing. In order to give full consideration to the points raised by defendants, plaintiffs were requested to file an answer thereto, and defendants were allowed to file a reply.

■■ Defendants' principal contention is that this court erred in holding that triable issues of fact remain and that these questions are best decided by the trial court. Defendants contend that whether plaintiff's injuries arose out of and were incurred "in the course of" his employment are questions which should be decided as matters of law in favor of defendants. We cannot agree. Initially, we note that the interests of orderly judicial determination dictate that these questions, which were preempted by the trial court's ruling striking the affirmative defenses, be presented to the trial court for consideration in the first instance. See generally *Carillo v. Jam Productions, Ltd.* (1983), 97 Ill. 2d 371, 376, 454 N.E.2d 649.

Moreover, none of the cases which defendants have cited in their petition for rehearing dictate a contrary result. Indeed, defendants' original brief in this appeal recognized that whether the Workers' Compensation Act applies in cases such as this is essentially a question of fact for the jury under all the circumstances. The cases on which defendants now rely are distinguishable from the instant case and hence do not control the result. In *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 201 N.E.2d 434, the plaintiff was injured on the parking lot of his place of employment immediately following his working hours. The supreme court held that the accident occurred in the course of and arose out of the plaintiff's employment because it occurred on the premises

of the employer within a reasonable time before or after work. In the instant case a factual question exists as to whether plaintiff was "at work" for defendant Midwest Emery at the time of the accident. Similarly, in *Material Service Corp. v. Industrial Com.* (1973), 53 Ill. 2d 429, 292 N.E.2d 367, the supreme court concluded that the icy condition of the employer's parking lot was a contributing cause of the plaintiff's death and that plaintiff, who was killed during working hours, was accordingly within the provisions of the Workers' Compensation Act. As indicated above, whether plaintiff was injured while at work for Midwest Emery or during a "reasonable" time before or after is a question of fact. In addition, defendants have not suggested that any condition of the parking lot in the instant case was a contributing cause of plaintiff's injuries. In *Brooks v. Carter* (1981), 102 Ill. App. 3d 635, 430 N.E.2d 566, the plaintiff brought a common law action against his co-employee for injuries sustained in a motor vehicle accident on the employer's parking lot between work shifts. In that case, as in *Chmelik* and *Material Service Corp.*, the plaintiff was on the employer's premises during or within a short time of working hours. In the instant case, whether plaintiff was "at work" for Midwest Emery or for his own benefit or for that of some third party is the subject of conflicting evidence from which competing inferences may be drawn. Accordingly, we find it appropriate to remand this cause to the trial court.

▄▄▄ Defendants have also urged that we address the contention raised in their original brief that abandonment of the common law doctrine of contributory negligence as a complete defense violates defendants' rights to equal protection of the law. There can be little, if any, justifiable reliance on the maintenance of the *status quo* in the law of torts (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 26, 163 N.E.2d 89.) The United States Supreme Court has held that the abolition by statute of the defenses of contributory negligence and assumption of the risk does not violate the principles of "equal protection of the laws." (*Arizona Copper Co. v. Hammer* (1919), 250 U.S. 400, 423, 63 L. Ed. 1058, 1068, 39 S. Ct. 553, 557.) We see no reason to distinguish between judicial abrogation of these doctrines and legislative abolishment thereof.

For the foregoing reasons, defendants' petition for reconsideration of rehearing is denied.

LORENZ and WILSON, JJ., concur.