DENNIS F. MECH, Plaintiff, *v.* PULLMAN STANDARD *et al.*, Defendants (Pullman Standard, Third-Party Plaintiff-Appellant, v. Steel Builders, Inc., Third-Party Defendant-Appellee).

First District (5th Division)   No. 82—1612

Opinion filed February 10, 1984.—Rehearing denied November 1, 1985.

Wildman, Harrold, Allen & Dixon, of Chicago (Kevin T. Martin, John M. Stalmack, and David S. Rees, of counsel), for appellant.

Rooks, Pitts, Fullagar and Poust, of Chicago (Wayne F. Plaza, Michael E. Rusin, and Mark S. Dym, of counsel), for appellee.

JUSTICE WILSON delivered the opinion of the court:

This action arises from the dismissal of a third party complaint filed by Pullman Standard (Pullman) against Steel Builders, Inc. (Steel Builders), for implied indemnity and contribution. Originally, Dennis Mech, an Indiana resident, filed a one-count complaint alleging negligence against Pullman, William J. Van Dyck Contractors and Builders, Inc., Industrial Commercial Engineers, Inc., and Wheelabrator-Frye, Inc., for injuries he sustained on August 26, 1979, at a construction site at the Pullman plant in Hammond, Indiana. Van Dyck, the general contractor, had engaged Steel Builders to perform part of the construction work. Mech was an employee of Steel Builders.

In its answer to Mech's complaint, Pullman denied all allegations of negligence and was subsequently granted leave to file a third-party complaint which consisted of two counts against Steel Builders for implied indemnity (count I) and contribution (count II). Following a hearing on June 2, 1982, the trial court granted Steel Builders' motion to dismiss, ruling that Indiana law controlled this matter. The court further ruled that under Indiana law, which with few exceptions does not permit contribution or indemnity between joint tortfeasors, Pullman's third-party complaint failed to state a cause of action. Pullman now appeals. We reverse the trial court's decision.

OPINION

The central issue raised by the pleadings in this matter concerns a conflict of laws question, namely whether Indiana or Illinois law governs the viability of Pullman's indemnity and contribution claims.

Initially, Pullman contends that because Illinois is the forum State its conflict of laws guidelines should determine the applicable law and that pursuant to these laws, the most significant relationship principles set forth in the Restatement (Second) of Conflict of Laws, govern this action in tort. Applying this standard, Pullman reasons that al-

though Indiana's contacts are significant, they have no relation to the issue of apportioning liability among third parties. Illinois, Pullman further contends, has considerable interest in apportioning risk of loss as evidenced by the legislature's enactment in 1979 of the Contribution Among Tortfeasors Act. (Ill. Rev. Stat. 1981, ch. 70, par. 301 *et seq.*) We find this argument unpersuasive for the following reasons.

We note at the outset that as the forum State, the choice-of-law rules of Illinois determine the procedural question of whether Illinois or Indiana law governs the substantive issues raised by Pullman's third-party complaint. (*Velle Transcendental Research Association, Inc. v. Esquire, Inc.* (1976), 41 Ill. App. 3d 799, 803, 354 N.E.2d 622.) Illinois law must also be applied to decide the procedural question of whether the complaint should be dismissed. *Badorski v. Commonwealth Edison Co.* (1980), 89 Ill. App. 3d 494, 496, 411 N.E.2d 924.

Turning now to the merits of this cause, Pullman correctly states that Illinois has adopted the most significant relationship approach formulated by the American Law Institute in the Restatement (Second) of Conflict of Laws (Restatement) in resolving the liability issues raised in multistate tort actions. (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.) We disagree with Pullman's reasoning, however, that application of the Restatement principles to the instant matter leads to the conclusion that Illinois law governs the indemnity and contribution issues presented in this action. As we will explain, the State of Indiana clearly has the most significant relationship with the occurrence in question and Indiana law controls both counts of Pullman's complaint.

In *Ingersoll*, the decedent drowned in an automobile accident when his car broke through ice on the Mississippi River allegedly within the territorial jurisdiction of Iowa. The decedent's administratrix filed a complaint based on Iowa law. In determining which State law was applicable, the court found that Illinois had the most significant contacts with the action: the decedent was an Illinois resident; the estate was pending in Illinois; the plaintiff was an Illinois resident; and the defendants were Illinois residents. Iowa's only connection to the action, the court observed, was that by happenstance it was the "alleged situs" of the decedent's death. Holding that Illinois law was applicable, the court articulated its approach to a choice-of-law question pertaining to personal injury action by stating that the local law of the State where the injury occurred should determine the rights and liabilities of the parties unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, Illinois law should apply. 46 Ill. 2d 42, 45.

The *Ingersoll* holding is consistent with the choice-of-law principles formulated by the American Law Institute in the Restatement (Second) of Conflict of Laws (1971). In tort actions, the Restatement provides that certain contacts are to be evaluated according to their relative importance to the particular issue presented by the action. The contacts to consider include: (a) the place where the injury occurred; (b) the place where the conduct occurred; (c) the domicile, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship of the parties is centered. *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 47; Restatement (Second) of Conflict of Laws sec. 145 (1971).

The Restatement further states that contacts in a multistate tort action are to be evaluated in light of the underlying policy factors important to the tort area, which include: the needs of the interstate system; the relevant policies of the forum; the relevant policies of any other State which may have a dominant interest in the determination of the particular issue and the ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws secs. 6, 145 (1971).

In the instant case, Pullman and Steel Builders agree that Indiana has the most significant contacts as far as determining the standard of conduct between them. Pullman contends further, however, that these contacts have little importance or relation to the question of *apportioning liability* among possible tortfeasors in this cause since Illinois is the forum State, the general contractor's (Van Dyck) place of business is located in Illinois, Pullman and Steel Builders do business in Illinois and because Illinois policy strongly favors apportioning liability among third parties. We cannot agree with this conclusion.

■■ Our analysis of the record in the case at bar convinces us that as between the two jurisdictions involved, Indiana has the most significant relationship to the injury which resulted in the original cause of action before the trial court and that under the *Ingersoll* rationale, which adheres to the Restatement (Second) view, Indiana law controls the issue of negligence as well as that of apportioning liability between possible joint tortfeasors.

Restatement section 173, entitled "Contribution and Indemnity Among Tortfeasors," provides that "[t]he law selected by application of the rule of sec. 145 [which sets forth the contacts to be considered to determine which law controls a given issue] determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor." (Restatement (Second) of Conflict of Laws sec. 173 (1971).) Comment *a* under section 173 explains in part:

*"Contribution.*

\* \* \*

The state where conduct and injury occurred will not by reason of these contacts alone be the state that is primarily concerned with the question whether one tortfeasor may obtain contribution against another. *The local law of this state will, however, be applied unless some other state has a greater interest in the determination of the particular issue."* (Emphasis added.)

Regarding indemnity between joint tortfeasors, comment *b* further provides:

*"Indemnity.*

\*\*\*

On occasion, the law of torts may give one joint tortfeasor a right to indemnity against another joint tortfeasor. When there is a pre-existing relationship between the parties, the right of, one party to obtain indemnity from the other may be determined by the local law of the state where the relationship is centered. \* \* \* *In other situations, a right to indemnity in tort will usually be determined by the local law of the state of conduct and injury."* (Emphasis added.)

■ Applying these guidelines to the pending case, we find that the trial court properly decided that because the most significant contacts occurred in Indiana, the law of that jurisdiction controlled the contribution and indemnity issues presented in Pullman's third-party complaint. It is there that the conduct causing the injury occurred; it is the principal place of business of Steel Builders; and it is the place where the construction work between Pullman and Steel Builders is centered. The comments to section 173 of the Restatement that we have set forth above unambiguously state that when determining whether one tortfeasor may obtain contribution and indemnity against another, unless another State has a greater interest in the cause of action, the local law of the State of conduct and injury will be applied. Indiana law thus controls this issue as these contacts in our judgment are more significant than the contacts in Illinois which basically are that the forum court and Pullman's principal place of business are located there and Steel Builders, an Indiana corporation, does business in that State.

We next consider Pullman's contention that its third-party complaint states a cause of action for implied indemnity even if Indiana law is applied. Pullman asserts that although, generally, Indiana prohibits contribution or indemnity in the absence of an express contract, there are exceptions to this rule. The exception which Pullman argues

is applicable here is that the right to indemnity may be implied.

Under Indiana law, the right to indemnity generally springs from contract. In the absence of an express contract, Indiana follows the general rule that there can be no contribution or indemnity between joint tortfeasors. (*McClish v. Niagara Machine & Tool Works* (S.D. Ind. 1967), 266 F. Supp. 987.) There are, however, well recognized exceptions to this general rule, wherein the right to indemnity is implied. These exceptions are: (1) derivative liability which arises under the doctrine of respondeat superior; (2) between the supplier of a defective product and the merchant who stocks and sells it as received; and (3) constructive liability which imposes a nondelegable duty upon a person by operation of a special statute or rule of law. When such person is otherwise without fault, he is entitled to indemnity from one who directly causes the harm. 266 F. Supp. 987, 989-90.

■ It is the third exception which Pullman suggests may be applicable here. In this regard, Pullman states that in order to recover damages, the injured party who initiated the original cause of action before the trial court must first establish the duty Pullman owed to him. The nature of this duty, Pullman reasons, is a tort issue involving standards of conduct. Since Indiana is the location of the injury and the conduct causing the injury, Pullman posits that Indiana law should be applied in order to determine what this standard of conduct is, which may result in a finding that Pullman was vested with the nondelegable duty to provide a safe work place but that it is entitled to indemnity from Steel Builders if the harm caused was due to Steel Builders' negligence. We agree.

It is indeed possible that the original action filed by Mech could result in a finding that Pullman was constructively liable for Mech's injuries because it was charged with the nondelegable duty to keep its premises in a reasonably safe condition *but* that it was "otherwise without fault" because the injuries were caused by a third party, which may or may not be Steel Builders. Of course, if Pullman *is* found to be negligent, its liability for Mech's injuries would take the case out of the third exception set forth above because Pullman would not be "otherwise without fault." *McClish v. Niagara Machine & Tool Works* (S.D. Ind. 1967), 266 F. Supp. 987, 990.

The trial court, therefore, improperly dismissed Pullman's third-party complaint since, as we have concluded, the complaint states a cause of action under the applicable Indiana law that we have set forth above. We will not address the question Pullman raises of whether under Indiana law it could be liable for the negligence of an independent contractor (Steel Builders) as this issue was not pre-

sented before the trial court and appears to have been raised for the first time in Pullman's brief on appeal.

For the foregoing reasons, we conclude that the trial court's decision that Pullman's third-party complaint failed to state a cause of action for indemnity under Indiana law was in error. Accordingly, the court's judgment dismissing said complaint is reversed.

Reversed.

LORENZ and SULLIVAN, JJ., concur.