**Sandra TOOMER, Individually and as Personal Representative of the Estate of Gerald Toomer, Deceased, et al., Plaintiffs,**

v.

**UNITED RESIN ADHESIVES, INC., an Illinois corporation, et al., Defendants.**

**UNITED RESIN ADHESIVES, INC., an Illinois corporation and United Resin Products, Inc., a New York corporation, Counter-Plaintiffs,**

v.

**MONTGOMERY TANK LINES, INC., an Illinois corporation, Counter-Defendant.**

No. 83 C 4837.

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1986.

James F. Finn, Detroit, Mich., and Charles M. Noteboom, Bedford, Tex., for plaintiffs.

Alan P. Miller, Kiesler & Berman, Chicago, Ill., for United Resin Adhesives, Inc. and United Resin Products, Inc.

William T. Weaver, Gilbert R. Hoy, Jr., Lord, Bissell & Brook, and Michael E. Dowd, Dowd & Dowd, Ltd., Chicago, Ill., for Montgomery Tank Lines, Inc.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Presently pending are three motions in this complex wrongful death action: (1) Motion of Sandra Toomer, individually and as personal representative of the estate of Gerald Toomer, deceased, and Susan Bedford, next friend of minor children Carl Lynn Toomer, James Todd Toomer and Kerry Gene Toomer (collectively "Plaintiffs") to vacate this court's award of summary judgment for Montgomery Tank Lines, Inc. ("Montgomery") on Count II of the complaint; (2) Montgomery's motion for summary judgment on Count III of the complaint; and (3) Montgomery's motion, as Counter-Defendant, to dismiss the counterclaim of Counter-Plaintiffs United Resin Adhesives, Inc. and United Resin Products, Inc. ("United Resin").[1]

The events preceding this case are quite simple. The decedent, Gerald Toomer ("Toomer"), was a truck driver for Montgomery. On October 6, 1982, Toomer drove to Lyons, Illinois and loaded his tank with glue manufactured by United Resin. The glue was composed in part of the toxic solvent trichloroethylene ("TCE"). Toomer then delivered the glue to Purex Industries, Inc. in St. Louis, Missouri. After the delivery, Toomer attempted to wash out the residual glue in the tank by himself, was overcome by TCE fumes, and died.

Plaintiffs' three-count complaint seeks damages for wrongful death, loss of consortium and loss of support. Count I, a strict product liability count, alleges TCE was a defective product, unreasonably dangerous because it lacked a warning of its

---

1. Although United Resin's action against Montgomery is really a cross-claim, Fed.R.Civ.P. Rule 13(g), the parties call it a counterclaim and we adhere to their description in this opinion.

unavoidably hazardous properties. United Resin, the manufacturer, seller, supplier and distributor of TCE, is the only defendant still named in Count I.[2] Count I also charges United Resin with negligence in failing to adequately warn Toomer of the extreme dangers of TCE.

Count II alleges that Toomer was an employee of Montgomery, and Montgomery was grossly negligent in failing to provide Toomer with reasonably safe working conditions. Count III alleges, in the alternative, that Toomer was an independent contractor; i.e., an employee of Gerald Toomer Trucking, Inc., a corporation which contracted to provide trucking services for Montgomery. Count III charges Montgomery was ordinarily and grossly negligent in failing to provide a safe working environment for independent contractors. United Resin filed a counterclaim against Montgomery seeking contribution in the event United Resin is held liable to Plaintiffs.

Jurisdiction is based on diversity, 28 U.S.C. § 1332(a). Plaintiffs are citizens of Texas; United Resin Adhesives, Inc. is an Illinois corporation with its principal place of business in Illinois; United Resin Products, Inc. is a New York corporation with its principal place of business in New York; and Montgomery is an Illinois corporation with its principal place of business in Illinois. We have personal jurisdiction over all defendants and venue is properly laid in the Northern District of Illinois.

## Discussion

### I. Choice of Law

The first matter to be addressed in this diversity suit is determining what law governs.[3] The first step, of course, is to examine the conflicts of law rules applied by the forum state, Illinois. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 61

S.Ct. 1020, 85 L.Ed. 1477 (1941). Upon examination of the Illinois conflicts of law principles, we conclude that Texas law should apply.

Illinois has adopted the "most significant relationship" approach (as stated by the Restatement (Second) of Conflict of Laws) in resolving the liability issues raised in multi-state tort actions. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970); *Mech v. Pullman Standard,* 136 Ill.App.3d 939, 92 Ill.Dec. 45, 484 N.E.2d 776 (1st Dist.1984). Generally, Illinois courts apply the local law of the place of injury unless Illinois or some other state has a more significant relationship with the occurrence and with the parties. *Vickrey v. Caterpillar Tractor Co.,* 146 Ill.App.3d 1023, 100 Ill.Dec. 636, 497 N.E.2d 814 (4th Dist.1986). Illinois courts follow a tripartite procedure: first, isolate the issues involved; second, identify the relevant policies embraced in the conflict; third, examine the contacts and determine which jurisdiction has the superior interest in having its policy applied. *Vickrey,* 100 Ill.Dec. at 639, 497 N.E.2d at 817; *Mitchell v. United Asbestos Corp.,* 100 Ill.App.3d 485, 55 Ill. Dec. 375, 426 N.E.2d 350 (5th Dist.1981).

There are three issues involved in the present case: whether a workers' compensation claimant may recover from his employer in addition to his workers' compensation award; whether Toomer was an employee or independent contractor vis-a-vis Montgomery for purposes of the Texas Workers' Compensation statute; and whether a defendant may obtain contribution or indemnity from an employer which has previously paid benefits under the Texas Workers' Compensation statute to an injured employee. These questions revolve around interpretations of the Texas Workers' Compensation statute, under which Plaintiffs have been receiving payments

2. Defendant E.M. Science, Inc. was dismissed per stipulation May 29, 1985. Summary judgment in favor of Purex Industries, Inc. was entered May 14, 1986. Summary judgment in favor of Baron Blakeslee, Inc. was entered August 28, 1986.

3. We limit our decision on the choice of law question to Counts II and III, and the counterclaim. Count I, the product liability claim, is not presently at issue; it involves different considerations which may require a different choice of law outcome.

since November 1982. Hence, we conclude the issues involved weigh in favor of applying Texas law.

The underlying policies as determined by Illinois and Texas courts diverge at times. In Illinois, the purpose of workers' compensation is to afford employees and their dependents assured financial protection in the event of an on-the-job injury while simultaneously eliminating the enormous cost of thousands of common law actions against employers. *See* Ill.Rev.Stat. ch. 48, § 138.1 *et seq.; Peoria County Belwood Nursing Home v. Industrial Comm'n of Illinois*, 138 Ill.App.3d 880, 93 Ill.Dec. 689, 487 N.E.2d 356 (3d Dist.1985). Thus, an employer is exempt from common law actions by employees for injuries arising out of employment. *See, e.g., Young v. St. Elizabeth Hospital*, 131 Ill.App.3d 193, 86 Ill.Dec. 389, 475 N.E.2d 603 (1st Dist.1985); *Walker v. Midwest Emery Freight Systems*, 119 Ill.App.3d 640, 78 Ill.Dec. 266, 461 N.E.2d 1373 (1st Dist.1984); *cf. Unger v. Continental Assur. Co.*, 107 Ill.2d 79, 89 Ill.Dec. 841, 481 N.E.2d 684 (1985). This exemption applies even when the employer's wrongful conduct was intentional. *Fregeau v. Gillespie*, 96 Ill.2d 479, 71 Ill. Dec. 716, 451 N.E.2d 870 (1983); *Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198 (1980). An employee simply cannot recover from an employer in both a workers' compensation proceeding and a common law action. *Collier*, 41 Ill.Dec. at 782, 408 N.E.2d at 204; *Rhodes v. Industrial Comm'n of Illinois*, 92 Ill.2d 467, 66 Ill.Dec. 83, 442 N.E.2d 509 (1982); *see also Sims v. Teepak, Inc.*, 143 Ill.App.3d 865, 97 Ill.Dec. 914, 493 N.E.2d 721 (4th Dist.1986). But this bar applies only to employees; independent contractors are not eligible to receive workers' compensation benefits, hence are not barred from pursuing common law remedies against their contractor. *Alexander v. Industrial Comm'n of Illinois*, 72 Ill.2d 444, 21 Ill. Dec. 342, 381 N.E.2d 669 (1978).

In Illinois, an employer is potentially liable for contribution to a third party tortfeasor. A third party, potentially liable to an injured employee, may maintain a contribution action against that employee's employer. *Doyle v. Rhodes*, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984). Indeed, if the employee has filed an action against a third party, that third party *must* bring his contribution claim as a third party claim in the original action. *Laue v. Leifheit*, 105 Ill.2d 191, 85 Ill.Dec. 340, 473 N.E.2d 939 (1984). The rationale for allowing contribution actions against employers is that Illinois treats the employer-immunity right under workers' compensation as an affirmative defense, so the employer is still "subject to liability" in tort for purposes of the Contribution Among Tortfeasors Act, Ill.Rev.Stat. ch. 70, § 301 *et seq. Doyle*, 77 Ill.Dec. at 763–64, 461 N.E.2d at 386–87; *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1977), *cert. denied* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978).

■ In Texas, the stated purpose of workers' compensation is the same as for Illinois—providing financial awards to injured workers without regard to fault while protecting employers from common law actions by employees for injuries suffered in the course of employment. *See Paradissis v. Royal Indem. Co.*, 507 S.W.2d 526 (Tex.1974); *Leal v. U.S. Fire Ins. Co.*, 682 S.W.2d 591 (Tex.App.1984). Contrary to the policy in Illinois, however, Texas allows an injured employee to obtain exemplary damages from an employer for injuries caused by the employer's gross negligence even if the employee has previously obtained a workers' compensation award. Tex. Constitution, Art. XVI § 26; Tex.Rev.Civ.Stat. Art. 8306, § 5; *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981); *Ghazali v. Southland Corp.*, 669 S.W.2d 770 (Tex.App.1984).

■ Texas, like Illinois, does not allow independent contractors to recover from their principals under its workers' compensation laws. *See United States Fidelity & Guaranty Co. v. Goodson*, 568 S.W.2d 443 (Tex.Civ.App.1978). But unlike Illinois, Texas prohibits contribution actions

against employers by third-party tort-feasors sued by injured employees covered by the Texas Workers' Compensation laws. *See, e.g.,* Tex.Rev.Civ.Stat. Art. 8306, § 3; *Varela v. American Petrofina Co. of Texas,* 658 S.W.2d 561 (Tex.1983); *Superior Commercial Carpet v. American Chain and Cable Co., Inc.,* 623 S.W.2d 747 (Tex. Civ.App.1981); *General Elevator Corp. v. Champion Papers,* 590 S.W.2d 763 (Tex. Civ.App.1979); *Grove Mfg. Co. v. Cardinal Constr. Co.,* 534 S.W.2d 153 (Tex.Civ.App. 1976). We conclude that these differences in the policies of the laws of the different states, when considered in conjunction with the relevant contacts to each state, weighs in favor of application of Texas law.

The Restatement (Second) of Conflict of Laws directs a court to weigh all the relevant contacts according to their importance to the specific issues presented in each case. The relevant contacts which should ordinarily be evaluated include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile or place of business of the parties; and (4) the place where the relationship between the parties is centered. Restatement (Second) of Conflict of Laws § 145. In addition, in cases involving the application of workers' compensation statutes, an additional contact is considered: (5) the state under whose laws the claimant received or is receiving workers' compensation benefits. *See Vickrey,* 100 Ill.Dec. at 638, 497 N.E.2d at 816; *Kabak v. Thor Power Tool Co.,* 106 Ill.App.2d 190, 245 N.E.2d 596 (1st Dist.1969).

Here, the injury occurred in Missouri; the conduct causing the injury occurred in either Illinois or Texas (or both); the parties are domiciled or have places of business in both Illinois and Texas; and the relationship between United Resin and Montgomery was centered in Illinois whereas the relationship between Toomer and Montgomery was centered in Texas. However, the most important, and in this case decisive, contact is that Plaintiffs receive workers' compensation benefits under the laws of the State of Texas.

The Texas workers' compensation system is finely crafted and its subscribing employers require stable, certain laws in order to protect their employees in the most economically efficient manner possible. The stability and certainty of the entire Texas system could be gravely undermined by application of contrary Illinois law. Texas employers structure their workers' compensation coverage on the assumption they are immune from third-party suits. Texas employers' costs would undoubtedly climb if they were subject to unanticipated third-party actions. Texas employers anticipate and plan for the possibility of exemplary damages suits. So, while not welcomed, exemplary damage lawsuits brought by employees are considered part of the cost of subscribing to the Texas Workers' Compensation system.

Employers accepting the Illinois Workers' Compensation system, also require stability and certainty. However, our decision to apply Texas law will not increase instability nor increase uncertainty. No employer which has elected to accept the Illinois Workers' Compensation system will be subject to exemplary damage suits. Thus, the Illinois policy absolutely immunizing employers from suits by employees is not frustrated by application of Texas law.

In general, we refuse to impose upon employers which participate in one state's workers' compensation scheme the legal rules and doctrines of another state unless contacts with that other state dramatically outweigh the contacts with the first state. Illinois courts recognize this policy and hold that a court should defer to and apply *in toto* the law of the state whose workers' compensation statute is the basis for the claims at issue.

[D]eference to the exclusivity feature of the workmen's compensation law of a state having a significant interest in the work connected injury is in accord with the position taken by the Restatement.... [T]o deny a person the immunity granted him by a workmen's compensation act of a given state would frustrate the efforts of that state to restrict

the cost of industrial accidents and to afford a fair basis for predicting what those costs will be.

*Kabak*, 245 N.E.2d at 599, *quoting Elston v. Industrial Lift Truck Co.*, 420 Pa. 97, 216 A.2d 318 (1966). *See also Vickrey*, 100 Ill.Dec. at 640, 497 N.E.2d at 818.

Since Plaintiffs receive workers' compensation benefits under the laws of the State of Texas, we conclude that Texas law will govern Counts II and III and United Resin's counterclaim.

## II. *Summary Judgment on Count II*

■ Plaintiffs move to vacate this court's order of May 15, 1986, granting summary judgment to Montgomery on Count II. For purposes of this discussion, we shall continue to treat Montgomery as the moving party and Plaintiffs as the parties opposing summary judgment. Fed.R. Civ.P. Rule 56. Summary judgment is inappropriate when the nonmoving party has presented sufficient evidence for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). We must take into account the evidentiary standard of proof that would apply at a trial on the merits. *Id.*, 106 S.Ct. at 2512. Texas law provides that the level of proof in cases involving gross negligence and exemplary damages is a preponderance of the evidence standard. *Ford Motor Co. v. Durrill*, 714 S.W.2d 329, 347 (Tex.App. 1986). If a defendant in a civil case involving a preponderance of the evidence standard moves for summary judgment based on lack of proof of a material fact,

> the [trial] judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could

find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Anderson*, 106 S.Ct. at 2512. Hence, in the present case, we must ask whether Plaintiffs have presented sufficient evidence to enable a jury to reasonably find that Montgomery's conduct had been grossly negligent.

■ The Texas definition of gross negligence is, "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981) (hereinafter *"Burk"*). Before *Burk*, Texas had employed a "some care" test for gross negligence; that is, if defendant had taken some care to protect plaintiff, there could not be an entire want of care necessary for gross negligence. *See, e.g., Sheffield Division, Armco Steel Corp. v. Jones*, 376 S.W.2d 825 (Tex.1964); *Loyd Electric Co. v. DeHoyos*, 409 S.W.2d 893 (Tex.Civ.App.1966). Now, however, Texas employs a definition which focuses on the mental state of the defendant:

> What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

*Burk*, 616 S.W.2d at 922 (emphasis in original).

■ While Texas law of gross negligence focuses on a defendant's mental state, it is not necessary that plaintiff present direct evidence of a defendant's subjective state of mind. *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 573 (Tex.1985). A mental state may be inferred from actions. *Burk*, 616 S.W.2d

at 922. A plaintiff may objectively prove a defendant's gross negligence by proving that under the surrounding circumstances a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others. *Williams,* 699 S.W.2d at 573. Applying these principles to the case at bar, Montgomery can be held liable for exemplary damages if Plaintiffs show that under the surrounding circumstances, a reasonable person would have realized that Montgomery's conduct created such an extreme degree of risk that Montgomery's failure to act differently demonstrated conscious indifference to Toomer's welfare and safety.

In support of its motion for summary judgment, Montgomery presents evidence relating to its general safety procedures and policies. For instance, Montgomery held several safety meetings for its drivers, albeit at irregular intervals (Jiran dep. at 6–7). It presented a seven hour slide show to its drivers demonstrating proper procedures for handling hazardous substances (*Id.* at 9). Montgomery required each driver to successfully complete a Hazardous Material Handling Test before being allowed to haul hazardous substances (*Id.* at 25–26). Each driver received Department of Transportation regulations manuals and guides to hazardous materials (*Id.* at 28). Each driver also received protective gear such as rubber gloves, a disposable breathing filter, rubber boots, an acid resistant rain suit, a hard hat, and goggles (*Id.* at 13–14.)

This uncontradicted evidence shows that, as a general matter, Montgomery cared about the safety of its drivers. However, the inquiry in this case is not whether Montgomery's general safety program reflected an attitude of conscious indifference. The relevant inquiry is whether Montgomery was consciously indifferent as to the specific perils presented by drivers washing out hazardous material from their tanks. *See Martin v. Texaco, Inc.,* 726 F.2d 207, 210–211 (5th Cir.1984) (applying Texas law).

Plaintiffs assert three ways relating to washouts of hazardous materials by drivers in which Montgomery was grossly negligent in this case: (1) failing to warn Toomer of the nature and propensities of his hazardous cargo; (2) failing to provide adequate training in safety precautions; and (3) failing to provide adequate safety equipment such as an oxygen respirator instead of a filter respirator and polyvinyl boots and gloves (Second Amended Complaint, ¶ 16). Plaintiffs present evidence that although Montgomery provided some safety training, it never instructed its drivers how to safely wash out tanks, let alone how to safely wash out hazardous materials from their tanks (Jiran dep. at 10–11; Hayes dep. at 79). Plaintiffs also present evidence that although Montgomery provided safety clothing and a breathing filter, this equipment was absolutely useless with respect to Toomer's washout of hazardous TCE residue from his tank (Hayes dep. at 79–80) and may have created greater dangers by instilling a false sense of security in drivers.

Plaintiffs further point out that while Montgomery may have explicitly instructed its drivers not to wash out hazardous materials, it implicitly encouraged its drivers to do so. The implicit encouragement allegedly came in the form of economic incentives provided to drivers to do their own washouts. If a driver did his own washout, Montgomery would pay him $25.00. If, on the other hand, the driver took his tank to a commercial washout facility, Montgomery would reimburse the driver only 62% of the cost (Babbitt dep. at 32, 34). Since a commercial tank wash would cost between $50 and $100 (Jiran dep. at 36), both Montgomery and the driver would be economically benefited by the driver doing his own washouts. In fact, Montgomery's president admitted he knew Toomer regularly did his own washouts (Babbitt dep. at 32–33). Yet Montgomery allegedly failed to tell Toomer that the glue he was hauling was hazardous (perhaps because Montgomery failed to find out), or to provide him with adequate gear to safely wash out the glue from his tank.

Montgomery counters by saying· it did not know the shipment of glue contained a hazardous substance; and, moreover, all of its drivers were explicitly instructed not to wash out hazardous substances from their tanks (Montgomery's Memorandum in Support of Summary Judgment, pp. 9, 13). Thus, according to Montgomery, while it may have been negligent, there is no evidence of conscious indifference required for an award of exemplary damages.

■ We believe a jury could find the safety gear and safety training provided to Toomer by Montgomery was inadequate or useless for the safe handling of hazardous substances. We believe a jury could also find that Montgomery's stated policy against drivers washing out hazardous substances was just for "show" in light of the economic incentives encouraging drivers to do their own washouts. *See Burk*, 616 S.W.2d at 923. We also believe a jury could find that a safety conscious driver could not abide by Montgomery's policy prohibiting drivers from washing out hazardous material when he is not informed of the nature of his cargo. Indeed, we believe a jury could reasonably find that Montgomery's economic incentives implicitly encouraged drivers to assume their cargo was non-hazardous rather than hazardous, so they could wash out their own tanks. And we believe a jury could reasonably conclude that drivers provided with inadequate safety gear and training face such high risks of death or injury when washing out hazardous products that any company which tells its drivers to assume their cargo is non-hazardous is grossly negligent. Thus, on the

evidence presented, a jury could reasonably find in favor of Plaintiffs, and summary judgment for Montgomery is inappropriate. Plaintiffs' motion to vacate is granted.

### III. *Montgomery's Motion for Summary Judgment on Count III*

Count III alleges that Toomer was an independent contractor, or employee of the independent trucking company Gerald Toomer Trucking, Inc., with whom Montgomery contracted for trucking services. Plaintiffs allege that Montgomery had a duty to provide safe working conditions for its independent contractors, which duty was breached causing Toomer's death. In its motion for summary judgment, Montgomery asserts that Toomer was, as a matter of law, an employee of Montgomery and not an independent contractor or employee of an independent contractor. If an employee, Toomer would of course be barred from pursuing any recovery from Montgomery other than workers' compensation (unless Montgomery was grossly negligent, *see* discussion, *supra*, at pp. 225–27). Thus, if we find Toomer was an employee as a matter of law, Count III must be dismissed.

Montgomery offers two arguments in support of its conclusion that Toomer was an employee rather than an independent contractor. First, the evidence presented shows there is no genuine issue of material fact, Fed.R.Civ.P. Rule 56. Second, special regulations governing the trucking industry, 49 U.S.C. § 11107(a)(4) [4] and 49 C.F.R. § 1057.12,[5] mandate that all drivers of

---

**4.** 49 U.S.C. § 11107(a)(4), which is substantially similar to former 49 U.S.C. § 304(e), provides:

(a) Except as provided in Section 11101(c) of this title, the Interstate Commerce Commission may require a motor carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title that uses motor vehicles not owned by it to transport property under an arrangement with another party to ... (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as

if the motor vehicles were owned by the motor carrier.

**5.** 49 C.F.R. § 1057.12(c)(1), which is substantially similar to former 49 C.F.R. § 1057.4(a)(4), provides:

Except as provided in the exemptions set forth in Subpart C of this part, the written lease required under Sec. 1057.11(a) shall contain the following provisions. The required lease provisions shall be adhered to and performed by the authorized carrier ... (c) EXCLUSIVE POSSESSION AND RESPONSIBILITIES—(1) The lease shall provide that the authorized carrier lessee shall have exclu-

trucks leased to carriers are deemed employees of the carriers as a matter of law. For the following reasons, Montgomery's motion must be denied.

█ It is clear that Montgomery has not met its burden of presenting sufficient evidence to enable us to determine that Toomer was an employee as a matter of law. Whether a person is an employee or an independent contractor is normally a question for the jury. *Home Interiors and Gifts, Inc. v. Veliz,* 695 S.W.2d 35, 41 (Tex.Ct.App.1985); *see also Hoosier Home Improvement Co. v. United States,* 350 F.2d 640, 643 (7th Cir.1965). Under Texas law, a jury will look at five factors to determine whether an agent is an employee or an independent contractor: (1) the nature of the agent's business; (2) who has the obligation to furnish tools, supplies and materials to perform the job; (3) who has the right to control the progress of the work, except as to the final results; (4) the time for which the agent is employed; and (5) the method of payment, whether by time or by job. *Brinkley v. Almond,* 685 S.W.2d 446, 447–48 (Tex.Ct.App.1985). Of these, the right to control the details of the work is the most important factor. *Newspapers, Inc. v. Love,* 380 S.W.2d 582 (Tex. 1964); *Veliz,* 695 S.W.2d at 40.

█ We need not discuss the applicability of these factors in detail in the present matter, for Montgomery has not presented sufficient uncontradicted evidence to enable us to determine that it is entitled to judgment as a matter of law. For instance, Montgomery has submitted internal records which designate Toomer an employee (Exhibits "A" and "B" to Montgomery's Motion for Summary Judgment). However, Plaintiffs submit counter-evidence that Toomer's status changed from employee to independent contractor as of July 1, 1981. (Plaintiffs' Memorandum in Opposition to Summary Judgment, pp. 3–4, Exhibits "A," "B," and "C"). The conflicts in the evidence clearly demonstrate that summary judgment based on the evidence is improper.

Montgomery's second, and main argument, is that federal regulation of the trucking industry mandates an employer-employee relationship between all carriers using non-owned truck-tractors and their drivers. In the present matter, it is undisputed that Toomer owned the tractor and leased it to Montgomery, who then provided a tank (Babbitt dep. at 29).

█ Sections 11107(a)(4) and 1057.-12(c)(1) have been interpreted to mean that an owner/operator of a truck leased to a carrier is considered an employee of the carrier-lessee vis-a-vis the public and shippers. *See Price v. Westmoreland,* 727 F.2d 494 (5th Cir.1984); *White v. Excalibur Ins. Co.,* 599 F.2d 50 (5th Cir.1979); *Carolina Cas. Ins. Co. v. Ins. Co. of North America,* 595 F.2d 128 (3d Cir.1979); *Simmons v. King,* 478 F.2d 857 (5th Cir.1973). *See also Hershberger v. Home Transport Co.,* 103 Ill.App.3d 348, 59 Ill.Dec. 53, 431 N.E.2d 72 (2d Dist.1982); *Gunterberg v. B & M Transportation Co., Inc.,* 27 Ill. App.3d 732, 327 N.E.2d 528 (1st Dist.1975); *Hartford Accident and Indem. Co. v. Major,* 81 Ill.App.2d 251, 226 N.E.2d 74 (5th Dist.1967). In the typical case, the one for which the regulations were primarily designed, a motor carrier leases a truck from its owner; the owner-lessor of the truck also provides a driver. The truck, while carrying goods on the carrier-lessee's business, is involved in an accident with a member of the public (usually another vehicle on the road). The injured individuals sue the driver, the owner-lessor, and the carrier-lessee. The carrier-lessee claims the driver was not an employee but an independent contractor, thus trying to absolve itself from liable under the doctrine of *respondeat superior. See Carolina Casualty,* 595 F.2d at 129–130.

█ In this typical case, the carrier-lessee is held liable to the members of the

---

sive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

public. Congress and the ICC have determined that a carrier-lessee cannot evade its responsibility to the public by obtaining its trucks through leasing arrangements rather than ownership and employment of drivers. *See, e.g., Simmons,* 478 F.2d at 867. Therefore, if Toomer negligently caused an accident with an automobile, the injured parties could sue and recover, holding Montgomery liable on a *respondeat superior* theory for Toomer's negligence.

■ On the other hand, the present suit presents a wholly different factual situation with different policy considerations. This suit involves an attempt by an owner-lessor to recover from a carrier-lessee for his own injuries. No shippers and no members of the public are involved. We have discovered only one case in which an owner-lessor in similar circumstances was deemed an employee by virtue of the ICC statutes and regulations, *Hartford Accident and Indem. Co. v. Major,* 81 Ill. App.2d 251, 226 N.E.2d 74 (5th Dist.1967). The clear weight of authority, however, mandates the conclusion that secs. 11107(a)(4) and 1057.12(c)(1) do not apply to the present factual situation. Hence, whether an owner-lessor is an employee or an independent contractor of the carrier-lessee is determined by common law principles. *See Riddle v. Trans-Cold Express, Inc.,* 530 F.Supp. 186 (S.D.Ill.1982); *Mustang Transp. Co. v. Ryder Truck Lines, Inc.,* 523 F.Supp. 1097 (E.D.Pa.1981); *Farmer v. Employers Insurance of Wausau,* 152 Ga.App. 608, 264 S.E.2d 26 (1979); *Harold M. Kelly, Inc. v. Walton,* 6 Pa. Cmwlth. 236, 293 A.2d 627 (1972); *Carolina Casualty,* 595 F.2d at 138 (dictum).

In *Riddle,* for example, the plaintiff was the part owner of a trucking company which leased a tractor to defendant Trans-Cold. Plaintiff was sharing driving duties with John Mincello on a trip from New York to Texas. Mincello was driving and Plaintiff was a passenger when the leased tractor was involved in an accident with an automobile. Plaintiff was injured and sued Trans-Cold on the theory it was the employer of Mincello and vicariously liable for Mincello's negligence. The district court held valid a lease provision requiring the lessor to bear the cost of his injuries caused by Mincello's negligence. The court said that Plaintiff was not a member of the general public and could contract to hold the lessee harmless for the torts of its drivers. The court expressly declined to extend the fiction that drivers of lessees are "statutory employees" beyond situations involving shippers and the general public. 530 F.Supp. at 189 n. 5.

*White v. Excalibur Ins. Co.,* 599 F.2d 50 (5th Cir.1979), upon which Montgomery relies heavily, is factually distinguishable. Wright, the decedent driver, was deemed a statutory employee of the carrier because, unlike Toomer, he had no contractual relation with the carrier. Wright's only contract was with the owner-lessor. In effect, the driver was a stranger to the carrier just as the public is in the ordinary case. Therefore, the lessor and the carrier could not by contract affect the driver's legal rights afforded him by federal law.

In the present case, however, Toomer, the owner-lessor, had an employment contract with Montgomery, the carrier. While the terms of this contract could not alter the legal rights of third parties to treat Toomer as a "statutory employee" of Montgomery, the contract may validly alter Toomer's own status. We agree that:

> [W]hile a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties.

*Carolina Casualty,* 595 F.2d at 138 (footnote omitted).

Having examined all the relevant cases cited by both Montgomery and Toomer, we believe all these cases implicitly recognize this distinction and follow it. Moreover, such a principle furthers freedom of contract and does not in any way detract from the policies established by Congress: ship-

pers and members of the public are protected just as if the carrier was the owner of the tractor-trailer and the drivers were employees. We decide only that owner-lessors and carrier-lessees are free to structure their relationship in any manner they see fit. Here, Toomer and Montgomery may have seen fit to treat Toomer as an independent contractor for all purposes, and we will respect that decision.

Having concluded that federal law does not mandate Toomer's status as an employee as a matter of law, and that Montgomery has not presented sufficient evidence to decide this factual question as a matter of law, we must deny Montgomery's motion for summary judgment on Count III.

### IV. *United Resin's Counterclaim*

Montgomery seeks to dismiss United Resin's counterclaim on the grounds Texas law does not allow contribution actions against employers which pay workers' compensation for employees' on-the-job injuries. While this position is correct as stated, *see, e.g.,* Tex.Rev.Civ.Stat.Ann. Art. 8306, § 3(d), nevertheless we must deny the motion to dismiss.

We have previously decided that Texas law governs United Resin's counterclaim, *supra* at pp. 222–25. And we have decided that we cannot determine as a matter of law that Montgomery is an employer, *supra* at pp. 227–30. Thus, it would be anomalous to rule that United Resin is barred under Texas law from seeking contribution against Montgomery when it is undecided that Montgomery was in fact Toomer's employer. If a jury concludes Toomer was an independent contractor, United Resin may seek contribution from Montgomery for its share of the damages. The Texas Workers' Compensation statute (Art. 8306, § 3), only immunizes "the subscriber," *i.e.,* the employer providing workers' compensation protection; a third party may seek contribution against a principal of an independent contractor to the same extent as against any other non-employer tortfeasor under the Texas Comparative Negligence

Act, Tex.Rev.Civ.Stat. Art. 2212a, § 2(b) (now codified in Tex.Civ.Prac. & Rem.Code § 33.001 (Vernon 1986)).

### V. *Conclusion*

Accordingly, Plaintiffs' motion to vacate summary judgment on Count II is granted. Montgomery's motion for summary judgment on Count III is denied. Montgomery's motion to dismiss United Resin's counterclaim is denied.