Hartford Accident and Indemnity Company, Plaintiff-
Appellee, v. Hugh Major, Defendant-Appellant.

Gen. No. 66–20.

Fifth District.

April 19, 1967.

Ralph T. Smith, of Alton, for appellant.

Chapman & Strawn, of Granite City (Norman H. Kinder, Jr., of counsel), for appellee.

MORAN, P. J.

Defendant appeals from a judgment for the plaintiff in its suit against the defendant for unpaid insurance premiums and against the defendant on his counterclaim for the return of overpayments. The case was heard by the court without a jury.

The plaintiff, Hartford Accident and Indemnity Company, hereinafter referred to as Hartford, is engaged in the general insurance business. Its complaint alleged that it had issued four insurance policies to the defendant, Hugh Major, hereinafter referred to as Major, the sole proprietor of a trucking business: A workmen's compensation policy, which remained in effect for one year (WH 257042); a renewal workmen's compensation policy, which was cancelled by Hartford five months after its issuance (WH 105593); a general automobile liability policy, which was cancelled by Major (C 244534); and a general liability policy, which covered Major's business premises and which was also cancelled by Major (C 224755).

Concerning the two workmen's compensation policies, the evidence indicates that no claim for premiums was made until June, 1962, fifteen months after the first policy had been issued and three months after the renewal policy had been issued. At that time, Major received a premium statement, which was based upon an audit by Atwell, Vogel & Sterling, insurance auditors. Major immediately objected to the statement, contending

that he was not liable for the premiums claimed under the workmen's compensation policies because these premiums were based on the earnings of drivers of leased equipment who were not, as a matter of law, his employees and therefore were not intended to be included within the coverage of the policies.

Major is licensed by the Interstate Commerce Commission to transport goods for hire in interstate commerce and is also licensed by the Illinois Commerce Commission. All of the tractors he used in his business were owned by other individuals or companies and were used by him under the terms of written lease agreements entered into between him and the respective owners. The trucks in each case were leased with the drivers. In some instances, the drivers operated their own equipment; in other instances, they operated equipment owned by the lessors. When they operated equipment owned by the lessors, they were paid by the lessors.

The evidence on behalf of Major disclosed that the drivers could make deliveries by any route they chose; that they could hire other persons to drive their trucks without any objection by Major; that they could trip lease to other carriers whenever Major could not arrange jobs for them; that the leased drivers were also required to pay for repairs, gasoline, oil, tires, equipment, and licenses; that they were paid by the job, not on a time basis; that they did not receive a payroll check from Major, but that the money "received from Major was on truck lease statements"; that they paid the collision insurance on their vehicles; and that Major did not withhold any income tax from the money which he paid to them.

Major argues that the foregoing evidence proves that the drivers in question were, as a matter of law, not his employees, but were independent contractors if they drove their own equipment, and employees of indepen-

254

dent contractors if the equipment was owned by the lessors of Major.

Hartford contends that one or more of the following furnish an evidentiary basis for finding that the drivers in question were employees of Major:

The last sentence of paragraph 13 of the lease contract reads: "LESSEE reserves the right to cancel this agreement forthwith if equipment is not maintained and operated to the satisfaction of LESSEE."

Plaintiff's Exhibit No. 276 is a Truck Lease Statement issued by Major to which the following note was attached: "If your logs are not up to date within 3 days or have not been corrected, your paycheck will be held."

Plaintiff's Exhibit 271 is also a Truck Lease Statement issued by Major to which the following note was attached:

> "On your logs you must show in Line 4, on duty not driving, all time spent loading and unloading, when you are required to remain with the vehicle. Your logs will be checked against the shipping order, and must agree with same."

Plaintiff's Exhibit 317 was a notification by Major to all drivers and reads as follows:

> "We want to call your attention to the fact that we must know where you are at all times. In most cases we expect delivery of loads the following morning. If this cannot be met, you must call us. You may call 24 hours a day.
>
> "Drivers have been driving thousands of miles unnecessarily due to the fact they are not calling us when they are unloaded.
>
> "In no case should you ever take a load from Waukegan, Illinois without this office first dispatching you. It means dollars both to you and the company to follow this pattern.

255

"You must never in any case trip lease without first calling the office. Also when trip leasing for M. C. Slater, Scherer Freight Lines, Thru-Way Motor Transport, etc., you must furnish a copy of each day's trip lease for both companies."

Plaintiff's Exhibit 318 reads as follows:

"Beginning February 27, 1961 dispatching of trucks to load at Johns-Manville in Waukegan will be handled from the Wood River Terminal.

"Each driver will be required to load his own load, except in some cases Smitty's Spotting Service will load rush loads on spare trailers we have in Waukegan.

"When you reach the Waukegan Area—phone the Wood River Terminal and you will be given your instructions.

"In no case are you to call Johns-Manville or any other shipper in the Chicago Area.

"If we have no load for you—try to wild-cat a load for another carrier—if you are successful in getting a load notify the Wood River office of your destination."

Hartford argues that these exhibits indicate at least six ways in which Major controlled the drivers: (1) The sweeping language used in paragraph 13 of the Lease Contract was equivalent to a provision that Major had a right to fire the driver; (2) by the note attached to Plaintiff's Exhibit 276, he could withhold their checks; (3) by Plaintiff's Exhibit 271, he required them to show how their time was spent while on trips; (4) by Plaintiff's Exhibit 317, the drivers could never trip lease without first calling the office; they could never take a load out of Waukegan, Illinois, without first being dispatched by the office; (5) by Plaintiff's Exhibit 318, the drivers could not call Johns-Manville or any other

256

shipper in the Chicago area; and (6) he told them where to load and unload.

In Coontz v. The Industrial Commission, 19 Ill 2d 574, at 577, 169 NE2d 94, our Supreme Court said:

"When previously confronted with similar issues, this court has consistently pointed out that there can be no inflexible rule which may be applied in all situations to determine whether one is an employee or an independent contractor, and have held that the answer in each instance depends upon the analysis of the facts of the particular case. (Henry v. Industrial Commission, 412 Ill 279; Kijowski v. Times Publishing Corp., 372 Ill 311.) No single facet of the relationship between the parties is determinative, but many factors, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and the furnishing of tools, materials or equipment have evidentiary value and must be considered. (Henn v. Industrial Commission, 3 Ill2d 325.) Of these factors, the right to control the work is perhaps the most important single factor in determining the relation, (Crepps v. Industrial Commission, 402 Ill 606,) inasmuch as an employee is at all times subject to the control and supervision of his employer, whereas an independent contractor represents the will of the owner only as to the result and not as to the means by which it was accomplished. Immaculate Conception Church v. Industrial Commission, 395 Ill 615; Besse v. Industrial Commission, 336 Ill 283; Lawrence v. Industrial Commission, 391 Ill 80."

Applying these principles to the case at bar, we believe that there was a reasonable basis for the trial court's finding that the drivers in question were employees of Major.

257

We find the trial court was correct in its decision for another and more cogent reason—in that Major was a motor carrier of goods in interstate commerce operating under authority of a certificate of license issued by the Interstate Commerce Commission. The transportation of goods in interstate commerce by a motor carrier subjects the carrier to the applicable provisions of the federal statute, 49 USCA 301, et seq., governing such carriage and the rules and regulations of the Commission.

Title 49 USCA 304(e) provides:

> "Subject to the provisions of subsection (f) of this section, the Commission is authorized to prescribe, with respect to the use by motor carrier (under leases, contracts, or other arrangements) of motor vehicles not owned by them, in the furnishing of transportation of property—
>
> ". . .
>
> "(2)  such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles, including the requirements prescribed by or under the provisions of this chapter with respect to safety of operation and equipment and inspection thereof, which requirements may include but shall not be limited to promulgation of regulations requiring liability and cargo insurance covering all such equipment."

The Interstate Commerce Commission, under whose authority Major was at the time operating, provided by rule that every lease or interchange of vehicles involving interstate commerce, "shall provide for exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect

thereto, by the lessee for the duration of said contract, lease or other arrangement."

In compliance with said rule, Major used a standard leasing contract containing the following provision:

> "4. It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier lessee and that the lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers and the I.C.C."

■ We agree with the holding of the Supreme Court of North Carolina in Brown v. L. H. Bottoms Truck Lines, 227 NC 299, 42 SE2d 71, wherein the court said at page 75:

> "The transportation of goods in interstate commerce by motor vehicles was required to be under the rules and regulations of the Interstate Commerce Commission, and the Brown truck could only have been used in such transportation by the defendant franchise carrier as one of its fleet of trucks under its license plates. Hence it would seem to follow that control of the operation for the period of the lease was given to the licensed carrier, and that the owner-driven truck was in contemplation of law in its employ and the driver for the trip stood in the relationship of its employee, as found by the Industrial Commission.
>
> "We think the applicable rule, under the facts here presented, is that the lease or contract by which the equipment of the authorized interstate carrier was augmented, must be interpreted as carrying the necessary implication that possession and control of the added vehicle was, for the trip, vested in the authorized operator.
>
> "This conclusion is in accord with well-considered decisions in other jurisdictions."

259

■ Major also contends that even though the drivers in question might be considered employees of Major, they were not intended to be included within the coverage of Major's compensation insurance. Chapter 48, section 138.4(3), Smith-Hurd Illinois Annotated Statutes, Workmen's Compensation, provides that "(e)very policy of an insurance carrier, insuring the payment of compensation under the Act shall cover all the employees and the entire compensation liability of the insured . . ." This provision of the Act constitutes a part of the policy of the insurance in the present case. Willis v. Fidelity & Deposit Co. of Maryland, 345 Ill App 373, 103 NE2d 513; The People v. G. H. Cross Co., 361 Ill 405, 198 NE 356; Landis v. New Amsterdam Cas. Co., 347 Ill App 560, 107 NE2d 187; Konrad v. Hartford Accident & Indemnity Co., 11 Ill App2d 503, 137 NE2d 855.

■ Concerning both the automobile liability and the general liability policies, the evidence indicates that Major effected cancellation and that Hartford computed the total premium due by using the short-rate premium table. Major argues, however, that the short-rate premium table should not have been applied, since the cancellation was necessitated by Hartford's refusal to provide adequate service. Major testified, without a denial or the presentation of contrary evidence, that he could not contact his agent for forty-five days prior to the cancellation, even though he made numerous attempts; that when he contacted Hartford's St. Louis office, it did nothing but state that he should talk to his agent; that he had mailed material to the St. Louis office, but that there was no response; and that he had contacted his agent's wife and had left messages, but no call had ever been received. Major also testified, without contradiction, that he lost a very good customer and a $15,000 per month business because Hartford did not pay a legitimate claim for cargo and property damage after it had been notified; that Hartford did not

260

supply him with any forms after the notification; and that he also had to pay a number of small claims because he was unable to contact his agent and process the claims. Major concluded that "we felt that we had no insurance. We had no service, . . . so we cancelled the policy. . . . (W)e felt we had no protection."

The field auditor for the plaintiff testified that "the short-rate penalty" in a total amount of $657.71 was added to the premiums of these policies because Major requested the cancellation of the policies himself. Under the circumstances of this case, the finding of the trial court that the plaintiff was entitled to the short-rate premium cancellation is against the manifest weight of the evidence.

■ Major also claims that the undisputed testimony discloses that a $1,000 mathematical error was made in computing the premiums under the personal injury policy. The field auditor of Hartford, who was the only witness to testify concerning the premium computation on this policy, testified that:

> "The total earned premiums under the policy for bodily injury was seven thousand three hundred three dollars and one cent, ($7,303.01), for property damage was two thousand six hundred seventy-one fifty ($2671.50). Against these premiums we credited the deposit premium and record premiums during the year, of six thousand one hundred seven four one three ($6174.13) for bodily injury and *three thousand two six one sixty-nine ($3261.69) for property damage.*" (Emphasis added.)

The trial court allowed the sum of $1,538.69 for the item of damage rather than the sum of $538.69, which would have been the proper amount due if this testimony were correct. However, since the testimony of this witness on this item of damage, when considered as a whole, is rather confusing, the trial court is directed

261

to hear evidence concerning this item in order to determine the exact amount of premium due under this policy. Major makes no contention in this court concerning the allowance of interest by the trial court.

For the foregoing reasons, the judgment of the trial court is affirmed, insofar as its finding that the workmen's compensation premiums were properly computed, and as to the other portions of the claim, the judgment is remanded for further proceedings not inconsistent with the opinion.

Affirmed in part, reversed in part and remanded.

GOLDENHERSH and EBERSPACHER, JJ., concur.