**TRAVELERS INSURANCE COMPANY,**
**Appellant–Defendant,**

v.

**R.B. CARRIERS, INC. and F.F. & B., Inc., Appellees–Plaintiffs.**

No. 10A05–9211–CV–418.

Court of Appeals of Indiana, Fifth District.

May 13, 1993.

Transfer Denied July 14, 1993.

Joseph A. Colussi, Colussi & Armstrong, Madison, David L. Sage, II, David K. Barnes, Schiller & Osbourn, Louisville, KY, for appellant-defendant.

Jeffrey C. Sauer, W. David Kiser, Ackerson, Nutt, Blandford, Yann & Kiser, P.S.C., Anne Marie Sedwick, Lorce & Naville, New Albany, for appellees-plaintiffs.

SHARPNACK, Chief Judge.

Travelers Insurance Company appeals from a summary judgment on R.B. Carri-

ers, Inc. and F.F. & B., Inc.'s (collectively "R.B. Carriers") claim for the recovery of premiums paid to Travelers under a policy for worker's compensation liability coverage. The claim centered on whether drivers hired by R.B. Carriers pursuant to lease agreements, for which Travelers assessed R.B. Carriers premiums, subjected R.B. Carriers to potential worker's compensation liability. We reverse.

Travelers raises one issue for our review which we separate and restate as the following two issues:

1. Was R.B. Carriers potentially liable under the Worker's Compensation Act for injuries to the drivers in question by virtue of Ind.Code § 22-3-2-14(a)?

2. Were the drivers "employees" of R.B. Carriers within the meaning of the Worker's Compensation Act due to the standard lease under which R.B. Carriers engaged the drivers and which complied with ICC regulations?

R.B. Carriers entered into a series of one-year insurance contracts with Travelers covering, in part, R.B. Carriers' potential worker's compensation liability. The terms of the insurance contract required Travelers to perform an audit of R.B. Carriers in order to determine the premiums to be charged. R.B. Carriers employed a number of drivers who operated trucks owned by the company. R.B. Carriers also brokered deliveries using leased trucks. In some cases, R.B. Carriers leased the trucks from people who both owned and drove the vehicles ("owner/operators"). Those owner/operators are the subject of this litigation.

The insurance policy in question contained the following relevant provision:

**"PART FIVE—PREMIUM**

\* \* \* \* \* \*

C. Remuneration. Premium for each work classification is determined by multiplying a rate times a premium basis.... This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. All your officers and employees engaged in work covered by this policy; and

2. All other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations."

(Record, p. 84). The policy also provided that all premiums would be determined by Travelers' Manual of Rules, Rates, Rating Plans and Classifications ("manual"). The manual provided the following:

"Another type of hired truck is the 'OWNER–OPERATOR.' Usually these are individuals working alone. Since they are exempt from workman's compensation laws, they can look to our insured for benefits for work related injuries if they can establish an employer-employee relationship with our insured. Lacking evidence to the contrary, it is to be assumed that owner-operators are under the supervision and control of our insured, and for this reason are a proper inclusion in the audit."

(Record, p. 85).

The parties filed cross-motions for summary judgment, in support of which they submitted copies of the insurance policy and manual. In addition, the parties submitted a copy of a standard lease form and stipulated to the fact that it was used in leasing trucks from owner/operators.

The lease had specific provisions stating that, during the term of the lease, the vehicle "shall be under Lessee's exclusive control, possession and use." (Record, p. 77) However, the lease also contained a provision stating that the lessor "shall direct the operation of its equipment in all respects" in performance of the lease (Record, p. 75), as well as provisions requiring the lessor to indemnify the lessee for any loss stemming from the injury or death of the driver and to carry "Workman's Com-

pensation in the amount required." (Record, p. 76). The lease also contained a "Hold Harmless Clause" which included the following:

"Contractor [Lessor] recognizes that, as an Independent Contractor, Contractor is not covered by any Workman's Compensation Insurance of the Carrier [Lessee]. Further, Contractor expressly acknowledges that Carrier has no liability under Workman's Compensation Laws to Contractor or any employee, agent, or servant that Contractor may utilize in the performance of this agreement."

(Record, p. 77).

The parties stipulated to the fact that the lease was governed, regulated and reviewed by the Interstate Commerce Commission (ICC). In addition, they stipulated that the owner/operators operated their vehicles under R.B. Carriers' ICC permit numbers.

R.B. Carriers also submitted the affidavit of Harold Borah, its president and majority shareholder. Borah affirmed that the owner/operators controlled the specifics of where, when and how they worked, including which routes they would follow. In addition, he stated that the owner/operators were paid by the job and that R.B. Carriers did not withhold income for taxes or license fees or otherwise handle payment in the way that R.B. Carriers paid its regular employees. Furthermore, the owner/operators were free to make arrangements to carry other loads while on return trips from R.B. Carriers' deliveries.

The court entered summary judgment for R.B. Carriers in the amount of $34,765.07 with prejudgment and postjudgment interest and denied Travelers' motion for summary judgment.

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact.

*Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. However, Ind. Trial Rule 56(C) now limits our review to the portions of the above described materials designated by the parties to the trial court, and T.R. 56(H) prohibits us from reversing a summary judgment based upon the existence of an issue of material fact unless both that issue of fact and the material relevant thereto were designated to the trial court. *Babinchak v. Town of Chesterton* (1992), Ind. App., 598 N.E.2d 1099, 1101–1102.

A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the entry of summary judgment. *Id.* The moving party bears the burden of showing both the absence of a factual issue and the entitlement to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 312, 411 N.E.2d 614, 615.

Travelers was both contractually and statutorily bound to provide coverage for R.B. Carriers' entire worker's compensation liability risk. Ind.Code 22–3–5–5(b) provides:

"All policies of insurance companies and of reciprocal insurance associations under I.C. 22–3–2 through I.C. 22–3–6 are conclusively presumed to cover all employees and the entire compensation liability of the insured. Any provision in the policy attempting to limit or modify the liability of the company or association shall be wholly void."

The determinative question therefore is whether R.B. Carriers was at risk for liabil-

ity as to the owner/operators. Travelers asserts that R.B. Carriers was potentially liable for injuries to the owner/operators for two reasons: the owner/operators were employees of R.B. Carriers and R.B. Carriers was potentially liable for the owner/operators pursuant to I.C. § 22–3–2–14(a) regardless of whether they were employees.

We begin by rejecting Travelers' latter justification for charging premiums for the owner/operators. I.C. § 22–3–2–14(a) provides:

> "[A]ny corporation, partnership or person, contracting for the performance of any work exceeding five hundred dollars ($500) in value *by a contractor subject to the compensation provisions of IC 22–3–2 through IC 22–3–6*, without exacting from such contractor a certificate from the worker's compensation board showing that such contractor has complied with section 5 of this chapter, IC 22–3–5–1, and IC 22–3–5–2, shall be liable for the same extent as the contractor for compensation ... on account of the injury or death of any employee of such contractor, due to an accident arising out of and in the course of the performance of the work covered by such contract."

(emphasis added).

Travelers argues that the owner/operators subjected R.B. Carriers to potential liability because R.B. Carriers did not present Travelers with certificates of insurance as required by Part Five (C)(2) of the policy. Travelers refers to Part Five of the insurance policy, which contemplates I.C. § 22–3–2–14(a) liability when it refers to charging premiums for "[a]ll other persons engaged in work that could make us liable under Part One (Workers Compensation insurance) of this policy," but exempts such persons if certificates of insurance are provided.

Travelers is mistaken in its interpretation of I.C. § 22–3–2–14(a) and therefore in that section's applicability to this case. Owner/operators are not covered by I.C. § 22–3–2–14(a) because they do not fit within the definition of "contractor[s] subject to the compensation provisions of IC 22–3–2 through IC 22–3–6." Such language con-

templates entities which are "employers" within contemplation of the act and is aimed at assuring adequate coverage for *employees* of independent contractors where the contractors have not adequately covered compensation risks. Here, the owner/operators are not "employers" under the act because they do not "use the services of another for pay." I.C. § 22–3–6–1. Although sole proprietors may elect to make themselves employees of their sole proprietorship under I.C. § 22–3–6–1(b)(4), Travelers did not present any evidence that the owner/operators did so. The class of people I.C. § 22–3–2–14(a) seeks to protect do not exist in this case and that section is therefore inapplicable.

■ Nonetheless, we hold that summary judgment for R.B. Carriers was inappropriate. R.B. Carriers is correct in its assertion that only injuries suffered by *employees* arising out of and in the course and scope of their employment are compensable under the Worker's Compensation Act. I.C. § 22–3–2–2; I.C. § 22–3–6–1(b); I.C. § 22–3–6–1(e); *See also Fox v. Contract Beverage Packers, Inc.* (1980), Ind.App., 398 N.E.2d 709, 711. Normally, the analysis of whether an injured person is an employee, as opposed to an independent contractor, involves consideration of numerous factors. *See Fox,* 398 N.E.2d at 711–712. However, the leases entered into by R.B. Carriers and the owner/operators in compliance with ICC regulations rendered the owner/operators employees of R.B. Carriers as a matter of law and therefore subjected R.B. Carriers to potential worker's compensation liability. *Sharp v. Bailey* (1988), Ind.App., 521 N.E.2d 368, 370.

In *Sharp,* John Bailey, who was driving a truck which he owned and had leased to a carrier, collided with Billy Sharp, who was driving a truck owned by Adams Trucking, which had leased the truck to the same carrier. 521 N.E.2d at 369. Bailey brought a civil action against all three parties. The carrier's motion was denied. *Id.* Both leases contained provisions which: (a) required the lessors, Bailey and Adams Trucking, to maintain worker's compensa-

tion insurance for the drivers; (b) provided that the equipment would be used exclusively in the lessee's (the carrier's) business; (c) required the drivers to comply both with the lessee's rules and all rules and regulations of the ICC; (d) entitled the lessee to have any driver replaced whom it determined was unqualified; and, (e) required the lessors to indemnify the lessee for losses arising from accidents. *Id.*

The third district found that summary judgment should have been granted for the carrier because Bailey was an employee of the carrier, and, as such, worker's compensation was his exclusive remedy.[1] 521 N.E.2d at 370. The court stated that a *seriatim* examination of the factors traditionally considered in such an analysis was unnecessary because our supreme court's decision in *Transport Motor Express, Inc. v. Smith* (1974), 262 Ind. 41, 311 N.E.2d 424 controlled the case. In *Transport,* the court found that a driver's widow and dependant children were entitled to recover workmen's compensation benefits from a carrier. The driver was operating under a "trip lease" with the carrier, which lease, apparently in order to comply with ICC regulations, assigned the driver a route, required the driver to keep a log, and gave the lessee the right to replace the driver for violation of ICC or PSCI rules or regulations. 262 Ind. at 44–45, 311 N.E.2d at 426. The driver used the carrier's ICC and PSCI permit numbers. *Id.*

In upholding the industrial board's findings determining that the driver was an employee of the carrier, the *Transport* court quoted with approval from *Daniels v. Terminal Transport Company, Inc.* (1954), 125 Ind.App. 28, 119 N.E.2d 554. In that passage, the *Daniels* court stated that it would be inconsistent to permit a carrier to execute written agreements covering the employment of drivers and control of them required by ICC regulations and later allow it to dispute those terms in a proceeding to determine whether the driver is an employee under workmen's compensation law.

*Transport,* 262 Ind. at 46, 311 N.E.2d at 424.

Here, R.B. Carriers entered into a standard lease with the owner/operators which provides that, during the terms of the lease, the vehicle "shall be under the Lessee"s [sic] exclusive control, possession and use." (Record, p. 76) In addition, paragraph 20 of the lease provides: "Notwithstanding any provisions herein which might be construed otherwise, the Lessee shall have the exclusive possession, control and use of the said equipment. . . ." (Record, p. 78). ICC regulations in fact required not only that the lease contain such provisions, but that they be *adhered to* by the carrier lessee. 49 CFR § 1057.12.

We therefore hold, as did the court in *Sharp,* that the lease, in combination with ICC regulations, gave R.B. Carriers both the right and the duty to exercise control over the owner/operators such that they became employees of R.B. Carriers.

R.B. Carriers, however, points to paragraphs 4 and 11 of the lease which respectively state, "[t]he Lessor shall direct the operation of its equipment in all respects . . . [,]" and, "Lessor agrees to indemify [sic] Lessee against any loss or damage resulting from injury or death of such driver furnished with said equipment and to carry Workman's compensation in the amount required." (Record, pp. 75–76). The former contradicts the provisions made in accordance with ICC regulations. Because the lease makes clear the intention of the parties to comply with ICC regulations, we must give effect to the provisions consistent with that intent to the exclusion of paragraph 4.

Similarly, paragraph 11 is an ineffective attempt to relieve R.B. Carriers of its obligations under the act. I.C. § 22–3–2–15(a) negates that attempt as follows: "No contract, agreement (written or implied), rule or other device shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by IC 22–3–2 through IC 22–3–6. . . ." *But see Toomer v. United Resin Adhesives, Inc.* (N.D.Ill.

---

**1.** It was undisputed that Bailey's activity at the time of the collision would subject his injuries

to governance of the Act unless he was determined not to be an employee of the carrier. *Id.*

1986), 652 F.Supp. 219, 227–230 (Carrier-lessee and owner-lessor were free to contract to treat owner-lessor as an independent contractor vis a vis claims involving each other and not members of the general public); *Riddle v. Trans–Cold Express, Inc.* (S.D.Ill.1982), 530 F.Supp. 186, 190 (lessor could agree to indemnify and hold carrier harmless for injuries to lessor or lessor's employees); *Mustang Transportation Co. v. Ryder Truck Lines, Inc.* (E.D.Pa.1981) 523 F.Supp. 1097, 1102–1104.[2]

R.B. Carriers also points to Borah's affidavit, arguing that, even if R.B. Carriers had the *right* to control the owner/operators, it did not do so in practice. However, *Sharp* precludes such an argument in cases where the parties have entered into leases in compliance with ICC regulations. Likewise, without disputing the vitality of *Sharp*, R.B. Carriers asserts that the ICC regulations do not address claims between lessor and lessee but rather were designed to protect members of the public from financially irresponsible lessors. However, we are not so much concerned by the intent of those regulations as with their effect. The regulations themselves do not make the lessor an employee; rather compliance with them forms a relationship, the operative terms of which require the type of control which defines a worker as an employee within the meaning of our state's worker's compensation law.[3]

The trial court therefore erred in granting summary judgment for R.B. Carriers both because the lease provisions in concert with ICC regulations rendered the owner/operators "employees" of R.B. Carriers and because it is undisputed that, if deemed employees, the owner/operators were properly the subject of premium payments. It follows from this conclusion that the trial court also erred in denying Travelers' motion for summary judgment, because it too turned on the sole question of whether the owner/operators were employees within contemplation of the Worker's Compensation Act. We therefore reverse and order the trial court to grant Traveler's motion for summary judgment.

**REVERSED**

RUCKER and CHEZEM, JJ., concur.

---

**2.** IND.CODE § 22–3–2–15(a) likewise negates the "Hold Harmless Clause" contained in the standard lease.

**3.** Courts of other jurisdictions are split on the question of whether the applicable federal statute and ICC regulations render a lessor an employee for state worker's compensation purposes *Compare, e.g. White v. Excalibur Insurance Co.* (5th Cir.1979), 599 F.2d 50, *cert. denied,* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377; *Hartford Accident & Indemnity Co. v. Major* (1967), 81 Ill.App.2d 251, 226 N.E.2d 74; *Brown v. L.H. Bottoms* (1947), 227 N.C. 299, 42 S.E.2d 71 *with Toomer* 652 F.Supp. at 227–230; *Harold, M. Kelly, Inc. v. Walton* (1972), 6 Pa.Commw. 236, 293 A.2d 627.

In *Major,* the court addressed an issue strikingly similar to the issue before this court: whether a worker's compensation insurer properly charged premiums for drivers of leased trucks. 81 Ill.App.2d at 253, 226 N.E.2d at 74. The court found sufficient evidence to support the trial court's judgment for the insurer both because of specific instances where the carrier exercised control over the drivers while they were on their routes and the sweeping language contained in the leases. 81 Ill.App.2d at 257, 226 N.E.2d at 77. However, the court found that there was a "more cogent" reason to uphold the trial court's judgment: the lease, in compliance with ICC regulations, gave the carrier lessee "exclusive possession, control and use" of the equipment. 81 Ill.App.2d at 259, 226 N.E.2d at 77–78.